UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

LYNETTE HAIR,

Plaintiff,

v.

FEDERAL EXPRESS CORPORATION, a Delaware corporation,

Defendant.

NO: 11-CV-0209-TOR

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT is Defendant's Motion for Summary Judgment, ECF No. 18, and Defendant's Motion to Exclude Dr. Toby Long as an Expert, ECF No. 22. This matter was heard without oral argument on September 12, 2012. The Court has reviewed the motion, the response, and the reply, and is fully informed.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

## BACKGROUND

Plaintiff, Lynette Hair ("Ms. Hair") filed a complaint against Defendant, Federal Express Corporation ("FedEx") alleging interference in violation of the Family Medical Leave Act ("FMLA"); as well as disparate treatment and failure to accommodate disability under the Washington Law Against Discrimination ("WLAD"). Presently before the Court is Defendant's Motion for Summary Judgment and Defendant's Motion to Exclude Dr. Toby Long as an Expert.

## FACTS

On July 27, 2010, FedEx received FMLA certification by Ms. Hair's health care provider, Dr. Toby Long, which indicated she was suffering from depression and would require intermittent leave from work. Hanlon Decl., ECF No. 20-1, Ex. F. According to Dr. Long, Ms. Hair's depression "ebbed and flowed" and was affected by stressors including an ill mother, a father who had a stroke, the unexpected death of her sister, and a "hostile" work environment. ECF No. 43 at 3-4. Dr. Long also diagnosed Ms. Hair with PTSD that he opines was caused by the actions of FedEx. *Id*. However, on the FMLA paperwork Ms. Hair's physician checked the "No" box when asked whether she was "unable to perform any of his/her job functions due to the condition." *Id*.

FedEx contends that it terminated Ms. Hair's employment under FedEx Policy 2-50 because she received two warning letters and an unsatisfactory

performance review during a twelve month period.[1] Hanlon Decl., ECF No. 20-1, Ex. E. According to FedEx Policy 1-20, "employees who are delayed or prevented from coming to work must notify their manager as soon as possible…." Hanlon Decl., ECF No. 20-1, Ex. D. On June 1, 2010 Jeffrey Shaddix became the Senior Manager for the East Wenatchee FedEx station. Defendant's Statement of Facts in Support of its Motion for Summary Judgment, ECF No. 20 ("Def. SOF") at ¶ 4. Mr. Shaddix testified that in mid-June 2010 he met with employees at the Wenatchee station to explain the importance of the FedEx call-in policy and speaking to a manager personally. Def. SOF at ¶ 5-6. According to Shaddix, employees were instructed that leaving a message was not sufficient and they should contact other managers in the territory if necessary. Def. SOF at ¶ 7-9. FedEx also issued two "Policies of the Month" in April 2006 and January 2011, which were distributed to employees and posted at each station, instructing that proper notification required them to actually speak with a manager and leaving a message was not sufficient. Crutchfield Decl., ECF No. 20-5, Ex. A-B. Ms. Hair was issued a warning letter on August 5, 2010, for an alleged failure to comply

---

[1] The parties dispute whether FedEx properly counted absences as protected FMLA leave, and whether Ms. Hair's depression was a factor in her ability to comply with FedEx call-in policy. Def. SOF ¶ 19-20; ECF No. 48 at 4-6.

with FedEx call-in policy when she did not appear for her shift on July 13, 2010. [2] Def. SOF at ¶ 15-17. Ms. Hair was issued another warning letter on January 28, 2011, for allegedly violating FedEx call-in policy on January 27, 2011.[3] Def. SOF ¶ 22-24.

Ms. Hair received a 3.7 out of 7.0 on her final performance review, which was considered unsatisfactory. Def. SOF ¶ 27-28. A more detailed breakdown of how this score was calculated is discussed in section I.A.2 below, as well as disputed facts as to how the score was reached. Due to this unsatisfactory review, and the two warning letters, Ms. Hair was terminated from her employment with FedEx on February 24, 2011. Shaddix Decl., ECF No. 20-2, Ex. A. Management met with Ms. Hair to discuss all of these actions, and Ms. Hair did not appeal the warning letters, the unsatisfactory review, or her termination through FedEx's

---

[2] Ms. Hair disputes that she violated FedEx written policy and testified that she is "pretty sure" she called in. Ms. Hair also points out that Mr. Shaddix has no recollection of investigating her failure to call in or consulting with HR about whether the failure could have been related to her FMLA protected condition. ECF No. 48 at 2-3.

[3] As in n.1, supra, Ms. Hair disputes the factual circumstances surrounding this warning. ECF No. 48 at 2-3.

Guaranteed Fair Treatment Program. Def. SOF ¶ 21, 25, 29, 83, 85. Ms. Hair was employed by FedEx for eighteen years. ECF No. 47 at 2.

DISCUSSION

**I. Motion for Summary Judgment**

The court may grant summary judgment in favor of a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see also Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("its opponent must do more than simply show that there is some metaphysical doubt as to the material facts"). For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. Further, a material fact is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* The court views the facts, and all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 327, 378 (2007).

**A. FMLA Interference Claim**

The FMLA establishes two substantive employee rights: "first, the employee has a right to use a certain amount of leave for protected reasons, and second, the employee has a right to return to his or her job or an equivalent job after using protected leave." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1125 (9th Cir. 2001). To ensure enforcement of its protections, the FMLA provides that a private right of action may be brought by an employee seeking damages and equitable relief for a violation of rights under the FMLA. 29 U.S.C. § 2617(a). However, the FMLA does not entitle an employee to any rights, benefits, or positions they would not have been entitled to had they not taken leave. 29 U.S.C. § 2614(a)(3)(B).

Under the FMLA, "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). Ms. Hair contends that two separate actions by FedEx interfered with her rights under the FMLA by: (1) denying her substantive rights guaranteed under the FMLA by failing to recognize and designate several absences as FMLA qualified leave, and (2) considering her protected FMLA absences as a negative factor in its decision to terminate her employment. ECF No. 47 at 4-5.

//

1. Mischaracterization of Leave

It is violation of the FMLA for an employer to deny an employee's right to FMLA-protected leave. 29 U.S.C. § 2615(a)(1); 29 C.F.R. § 825.220(a)(1), (b). Moreover, it is the employer's responsibility to determine if an employee's leave request is covered under the FMLA and notify the employee accordingly, regardless of whether the employee formally asserts his or her FMLA rights. *See Bailey v. Southwest Gas Co.*, 275 F.3d 1181, 1185 (9th Cir. 2002) (noting that employee is required to justify leave if employer inquires). The Ninth Circuit has found that mischaracterization of FMLA protected leave as non-protected leave qualifies as "interference" under the FMLA and accompanying Department of Labor ("DOL") regulations. *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1135 (9th Cir. 2003) (failure of employer to assess plaintiff's entitlement to FMLA leave, as opposed to "personal" leave, was a denial of her substantive right and a violation of the FMLA). In *Xin Liu*, the court reasoned that by mischaracterizing the plaintiff's leave as "personal," she became improperly subject to the discretion of her employer when taking leave that she had a statutory right to take. *Id*.

FedEx does admit that when analyzing Ms. Hair's performance review, it "inadvertently counted" three absences from July 13, 2010 through July 15, 2010, but it dismisses this mistake as "inconsequential" in relation to calculating Ms. Hair's performance review score. ECF No. 19 at 10. FedEx again fleetingly

mentions in its reply brief that even if it assumed that all of Ms. Hair's absences were protected by the FMLA, it still would not have pulled her overall performance review score up sufficiently to avoid termination. ECF No. 51 at 2. However, FedEx's briefing in support of its motion for summary judgment does not indicate any challenge to Ms. Hair's claim of improper mischaracterization of FMLA leave in this motion for summary judgment.

Ms. Hair contends that FedEx failed to properly designate several absences as protected under the FMLA when calculating the number of missed days for her performance review. ECF No. 47 at 7. She testifies that FedEx failed to properly designate eleven (11) absences as FMLA protected leave. Hair Decl., ECF No. 49 at ¶ 5-6. This mischaracterization, she argues, was part of a "manipulation" by FedEx management to improperly lower her overall evaluation score as required to discharge her according to FedEx's "three strike" policy. ECF No. 47 at 9.

The question for the Court to consider here is whether there is a triable issue of fact as to whether Ms. Hair's substantive FMLA rights were violated by a misidentification of her protected leave. As to this discrete issue, the Court need not consider superfluous information regarding alleged improper motivation by FedEx in mischaracterization of the missed days, or whether the result of this "mistake" had any consequential impact on the eventual outcome of Ms. Hair's performance review. *See Bachelder*, 259 F.3d at 1130 (an employer's good faith

or lack of knowledge of an FMLA violation does not protect it from liability); *see also Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011) ("the employer's intent is irrelevant to a determination of liability"). FedEx has not demonstrated the absence of issues of material fact, and therefore, summary judgment is denied.

2. Negative Factor in Termination Decision

In order to prevail on a claim that an employer unlawfully "interfered" with an employee's rights under the FMLA, a plaintiff must prove, by a preponderance of the evidence, that the taking of FMLA protected leave "constituted a negative factor" in the termination decision. *Bachelder*, 259 F.3d at 1125 (can prove by using direct or circumstantial evidence, or both).

FedEx contends that Ms. Hair's employment was terminated because she received two warning letters and an unsatisfactory performance review during a twelve month period. ECF No. 19 at 3. These three disciplinary measures qualify her for termination under FedEx policy 2-50. Hanlon Decl., ECF No. 20-1, Ex. E. According to FedEx, Ms. Hair's FMLA leave was not considered. ECF No. 19 at 3. Ms. Hair responds that FedEx improperly used FMLA protected absences when calculating her unsatisfactory evaluation, and points out additional questions of material fact as to whether Ms. Hair's taking of FMLA leave constituted a negative factor in FedEx's termination decision. ECF No. 47 at 7-12.

**a. Warning Letters for Failing to Comply with Call in Policy**

According to Department of Labor regulations implementing part of the FMLA,

> When the need for leave is not foreseeable, an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances. For example, an employer may require employees to call a designated number or a specific individual to request leave. However, if an employee requires emergency medical treatment, he or she would not be required to follow the call-in procedure until his or her condition is stabilized and he or she has access to, and is able to use, a phone…If an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA–protected leave may be delayed or denied.

29 C.F.R § 825.303. FedEx issued two warning letters to Ms. Hair for violations of a FedEx call-in policy requiring employees to call in and speak to a manager personally if they miss a scheduled shift. Hanlon Decl., ECF No. 20-1, Ex. A-B. According to FedEx Policy 1-20,

> [e]mployees who are delayed or prevented from coming to work must notify their manager as soon as possible…. Employees who cannot reach their manager must notify another member of management in their work area concerning their delay and intended absence. Employees who fail to notify their manager in a timely manner may receive disciplinary action.

Hanlon Decl., ECF No. 20-1, Ex. D. This policy was reinforced by two “Policies of the Month” distributed to employees instructing that proper notification required them to actually speak with a manager and leaving a message was not sufficient. Crutchfield Decl., ECF No. 20-5, Ex. A-B. Shaddix, Ms. Hair’s senior manager, testified that he met with all of the employees to discuss the importance of

speaking to a manager personally, even if it was necessary to contact other managers in the territory. Shaddix Decl., ECF No. 20-2 at ¶ 3. Ms. Hair testified that she had home and cell numbers for Shaddix and Hanlon. Hair dep., ECF No. 20-4, pp. 53-54. Ms. Hair received her first warning letter on August 5, 2010, for failing to call in for a missed shift on July 13, 2010, and her second warning letter on January 28, 2011, for failing to call in for a missed shift on January 27, 2011. Hanlon Decl., ECF No. 20-1, Ex. A-B. According to FedEx, it determined that the first of these absences was protected under the FMLA, however, it contends that Ms. Hair's depression did not render her unable to call in and speak to a manager as required. Shaddix Decl., 20-2 at ¶ 3.

Ms. Hair responds that there is evidence from which a jury could conclude that these two warning letters, referred to as first and second "strikes," were actually motivated by her decision to use FMLA leave, because she did comply with FedEx's written policy by leaving messages on her manager's voicemail in both cases. ECF No. 47 at 11-12. According to Ms. Hair, discipline for failing to contact a manager personally based on "Mr. Shaddix's orally added requirement of personal contact notification" was part of an illicit motive by managers to "build a case" against her for termination. ECF No. 47 at 11. In addition, Ms. Hair argues that Mr. Shaddix failed to consult with HR about whether Ms. Hair's failure to

meet the personal call-in requirement was related to her FMLA protected condition. ECF No. 48 at 3.

**b. Unsatisfactory Performance Review**

An employee may be terminated, regardless of whether they are on FMLA leave, if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave. *See Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1006 (10th Cir. 2011). In addition, the FMLA is not implicated if disciplinary action is based on non-FMLA protected absences. *See Bachelder*, 259 F.3d at 1125.

FedEx argues that Ms. Hair's performance review was "thorough," and it did not consider FMLA protected leave as a negative factor in its review. ECF No. 7-8. The performance review is based on a weighted average of eight factors, including: (a) Teamwork (15%); (b) Attendance (15%); (c) Safety (5%); (d) Customer Contact (25%); (e) Methods/Standards (15%); (f) Quality (1) (10%); (g) Quality (2) (10%); and (h) Sales & Support (5%). Shaddix Decl., ECF No. 20-2 at ¶ 10. After consulting with other managers at the station, Ms. Hair's manager (Shaddix) gave her a performance review score of 3.7 out of 7.0. *Id*. at ¶ 9, Ex. B. Anything below 4.0 is considered unsatisfactory. *Id*. Ms. Hair did not appeal her

performance review or her termination. Crutchfield Decl., 20-5 at ¶ 6. FedEx offers explanations for the low scores calculated in several of the eight categories. [4]

In Teamwork Ms. Hair received a 2.0 ("well below satisfactory"), out of a possible 4.0, because of her two warning letters for violating call-in policy. Shaddix Decl., 20-2 at ¶ 11. In Attendance Ms. Hair received a 4.6 ("satisfactory") based on actual attendance and punctuality. Shaddix testified that he calculated Ms. Hair's attendance by counting the day she missed due to any "unexcused or unprotected reason," but did not count FMLA protected absences. *Id*. at ¶ 12. Shaddix also testified that he "inadvertently counted" three protected absences from July 13-July 15, 2010. *Id*. FedEx repeatedly argues that the corrected score after removing these absences would not be enough to avoid termination. *Id*.; ECF No. 51 at 2. Customer Contact is based on both external and internal customers at FedEx, and Ms. Hair received a 3.0 ("below satisfactory") in this category based on three Online Compliment/Counseling's ("OLCC") given to Ms. Hair for failing to enter timecards correctly (twice) and failing to return "aged" packages. ECF

[4] Ms. Hair was given the highest possible score for Safety, and the scores for Quality and Sales and Support were either automatically generated or based on a "uniformly applied formula." Shaddix Decl., 20-10 at ¶ 10. These calculations do not appear to be at issue.

No. 47 at 10. In Methods/Standards Ms. Hair again received a 3.0 based on OLCC's received for failing to follow procedures resulting in missed scans, failing to put packages on hold, and missing internal batches. ECF No. 47 at 11.

Ms. Hair argues that her managers manipulated the evaluation process and used their own discretion to achieve the necessary "three strikes" in order to discharge her under FedEx policy. ECF No. 47 at 8-9. This manipulation included improperly counting FMLA covered absences against her in the performance review calculation.[5] ECF No. 47 at 9. Ms. Hair contends that FedEx ignored mitigating factors "which should have been considered for the purpose of choosing not to impose discipline on Ms. Hair," such as the fact that management was not readily available to accept calls and that her FMLA condition made it difficult to comply with the policy. Plaintiff's Response to Defendant's Statement of Material Facts ("Pl. Resp."), ECF No. 48 at ¶5 f. Ms. Hair also argues that she had no significant history of discipline prior to submitting for FMLA leave, and all of the written discipline relied on by FedEx was administered after she provided notice of her FMLA condition. ECF No. 47 at 8. In addition, Ms. Hair contends that her termination was "at least in part, a reaction" by managers who were responding to complaints by Ms. Hair's co-workers about her absenteeism. ECF No. 47 at 9. Last, and perhaps most convincing for her argument, Ms. Hair offers an email from

[5] For further discussion of this theory see section A.1 supra.

her manager, Shaddix, indicating suspicion that Ms. Hair was improperly utilizing FMLA leave and abusing the FedEx attendance policy, which created serious problems with other employees. Lacy Decl., ECF No. 50, Ex. D.

In the light most favorable to Ms. Hair, the Court finds genuine issues of material fact with respect to whether her FMLA leave constituted a negative factor in FedEx's decision to terminate her. All of the performance problems referenced by FedEx occurred after she began taking FMLA protected leave and FedEx offers no evidence of ongoing disciplinary problems over the 17-years that Ms. Hair was employed by FedEx. Additionally, regardless of whether it made any difference in the ultimate calculation, there is dispute amongst the parties about whether FMLA is implicated because protected absences were counted against Ms. Hair at the time of the disciplinary process. *See Bachelder*, 259 F.3d at 1125. The email from Shaddix expressing dissatisfaction with Ms. Hair's FMLA claims is also sufficient to at least raise a triable issue of fact as to whether her taking of FMLA leave was a negative factor in the termination decision. Accordingly, the Court denies summary judgment on the FMLA interference claim.

**B. WLAD Claims**

Under the WLAD, it is unlawful for an employer to discriminate against a person in the terms or conditions of employment or to discharge an employee because of "the presence of any sensory, mental, or physical disability." Wash.

Rev. Code § 49.60.180(2). "An employer who discharges, reassigns, or harasses for a discriminatory reason faces a disparate treatment claim; an employer who fails to accommodate the employee's disability, faces an accommodation claim." *Hill v. BCTI Income Fund-I*, 144 Wash.2d 172, 190 n.14 (2001) *overruled on unrelated grounds by McClarty v. Totem Elec.*, 157 Wash.2d 214 (2006). Ms. Hair asserts both claims.

1. Failure to Accommodate

"An employer must reasonably accommodate the sensory, mental, or physical limitations of a disabled employee unless the employer can demonstrate an undue hardship would result to the employer's business." *Snyder v. Med. Serv. Corp. of Eastern Wash.*, 98 Wash. App. 315, 326 (Ct. App. 1999).

> To establish a prima facie case of failure to reasonably accommodate a disability under our case law, a plaintiff must show that (1) the employee had a sensory, mental, or physical abnormality that substantially limited his or her ability to perform the job; (2) the employee was qualified to perform the essential functions of the job in question; (3) the employee gave the employer notice of the abnormality and its accompanying substantial limitations; and (4) upon notice, the employer failed to affirmatively adopt measures that were available to the employer and medically necessary to accommodate the abnormality.

*Hill*, 144 Wash.2d at 192-93. An employer is required to take affirmative steps to help a disabled employee continue in their position or find one compatible with their limitations. *See Griffith v. Boise Cascade, Inc.*, 111 Wash. App. 436, 442 (Ct. App. 2002). However, an employer is not required to create a new position,

reassign essential job functions, or reassign an employee to a position already occupied. *Frisino v. Seattle School Dist. No. 1*, 160 Wash. App. 765, 777 (Ct. App. 2011). Reasonable accommodation "envisions an exchange between employer and employee where each seeks and shares information to achieve the best match between the employee's capabilities and available positions." *Goodman v. Boeing Co.*, 127 Wash. 2d 401, 408-409 (1995). Thus, the employee must initiate the process by giving notice and sufficient information to accommodate the disability, which triggers the employer's duty to investigate the nature and extent of the disability. *Id*. at 409.

At the outset of her responsive briefing on this issue Ms. Hair makes the conclusory statement that "it does not appear disputed" that Ms. Hair had a diagnosis of depression, that it had a limiting effect on her attendance, or that she could perform her job when allowed the reasonable accommodation of intermittent leave during "flare ups" of her depression. ECF No. 47 at 15. However, according to Ms. Hair, FedEx failed to accommodate her need for intermittent leave because it allegedly counted several absences that should have been recognized as caused by her disability against her at the time of her discharge. ECF No. 47 at 15-16.

FedEx argues it did give Ms. Hair the intermittent leave as stated on her FMLA Certification paperwork filed out by her physician, and did not count absences due to depression against Ms. Hair in any way. Shaddix Decl., ECF No.

20-2 at ¶ 16, Ex. C. According to FedEx, Ms. Hair utilized her FMLA protected leave "without incident" other than the two violations of call-in policy. ECF No. 19 at 13. FedEx also contends that Ms. Hair did not request any accommodation besides the intermittent leave requests, did not tell management that her depression was a factor in her performance problems at work, and did not mention that she was unable to comply with call-in policy due to her depression. *Id*.; Shaddix Decl., ECF No. 20-2 at ¶ 17. Last, FedEx argues that no other reasonable accommodation was available through which Ms. Hair could perform the essential functions of her position. ECF No. 19 at 14. Attention to detail is the "most critical" job function of Ms. Hair's former position of Senior Service Agent. Shaddix Decl., ECF No. 20-2 at ¶ 18. The Courier position is the only other non-management position at FedEx's Wenatchee station and it also requires strong attention to detail as well as other qualifications that Ms. Hair did not possess such as a commercial driver's license with a hazardous material endorsement. ECF No. 19 at 15.

The Court finds there are disputed issues of material fact on this issue to preclude summary judgment. The parties do not appear to dispute that Ms. Hair had a disability, nor do they disagree that Ms. Hair did take the intermittent leave she was allowed under the FMLA. The Court notes that Ms. Hair's cursory briefing on this issue does not offer any argument as to why she was qualified to

perform the essential functions of the job in question. Her FMLA Certification paperwork indicates that her doctor checked "No" in answer to the question of whether she was unable to perform her job functions due to her condition, which could mean that she was still perform the essential functions of her position. FedEx's argument on this issue is also perplexing to the Court in that it discusses the essential functions of the job but does not make a conclusive statement that Ms. Hair was not able to perform the essential functions of her job, rather, it focuses entirely on the argument that no other accommodation was available.

There is also a genuine dispute amongst the parties about whether or not Ms. Hair communicated the extent of her disability effectively. Again, she submitted her FMLA certification indicating she needed intermittent leave, but aside from this paperwork, there is very little in the record to support a finding that she engaged in an exchange of information sufficient to allow FedEx the opportunity to participate in an ongoing attempt to accommodate her disability.

The crux of this issue, however, is whether FedEx counted her FMLA protected "intermittent leave" against her in its decision to terminate her employment, thereby failing to reasonably accommodate her disability. There is a triable issue of fact as to whether FedEx took the required affirmative measures to reasonably accommodate her disability and allow her to continue in her position if FedEx was actually counting the absences taken under the guise of reasonable

accommodation against her in its termination decision. Viewing the facts in the light most favorable to Ms. Hair, the Court must deny summary judgment on Ms. Hair's failure to accommodate claim under the WLAD.

2. Disparate Treatment

Washington courts use a burden shifting analysis in cases alleging employment discrimination under the Washington Law Against Discrimination ("WLAD"). *Domingo v. Boeing Employees' Credit Union*, 124 Wash. App. 71, 77 (Ct. App. 2004) (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

> Under this framework, the plaintiff has the initial burden of proving a prima facie case. Once the plaintiff establishes a prima facie case, an inference of discrimination arises. In order to rebut this inference, the defendant must present evidence that the plaintiff was terminated for a legitimate reason. The plaintiff must then show that the proffered reason is a pretext for discrimination. The plaintiff has the final burden of persuading the trier of fact that discrimination was a substantial factor in the termination decision.

*Domingo*, 124 Wash. App. at 77 (internal citations omitted). Therefore, summary judgment is proper if (1) the plaintiff cannot provide specific and material facts supporting every element of the prima facie case, (2) plaintiff cannot provide evidence that the defendant's actions were pretextual, or (3) if no rational trier of fact could conclude that the action was discriminatory. *Id*.

Ms. Hair cites to the *Callahan* case which outlines the requirements of a prima facie case of disparate treatment disability discrimination as establishing that she was: (1) disabled, (2) subject to an adverse employment action, (3) doing

satisfactory work, and (4) discharged under circumstances that raise a reasonable inference of unlawful discrimination.[6] *Callahan v. Walla Walla Housing Authority*, 126 Wash. App. 812, 819-820 (Ct. App. 2005); *see also Anica v. Wal-Mart Stores, Inc.*, 120 Wash. App. 481, 488 (Ct. App. 2004) (*citing Ennis v. Nat'l Ass'n of Bus. And Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995)). However, a review of disparate treatment disability cases reveals that Washington courts have more consistently required an employee to establish a prima facie case by providing evidence that she was (1) disabled; (2) suffered an adverse employment action; (3) doing satisfactory work; and (4) was treated differently than someone not in the protected class. *See Riehl v. Foodmaker, Inc.*, 152 Wash.2d 138, 152 (2004); *Kirby v. City of Tacoma*, 124 Wash. App. 454, 468 (Ct. App. 2004); *Becker v. Cashman*, 128 Wash. App. 79, 85 (Ct. App. 2005); *Roeber v. Dowty Aerospace Yakima*, 116 Wash. App. 127, 135 (Ct. App. 2003).

---

[6] The Court notes that while Ms. Hair cites to the *Callahan* case, she does not utilize the same elements of a prima facie claim as the *Callahan* court. Instead, Ms. Hair claims to "establish her disparate treatment claim by showing she (1) had a real or perceived disability, (2) was discharged, (3) was satisfactorily performing her job, and (4) her discharge was due to her disability." ECF No. 47 at 13.

FedEx argues that Ms. Hair cannot prove that the reasons for her termination were a pretext for disability discrimination because she was terminated for violation of FedEx policy when she received two warning letters and an unsatisfactory review. ECF No. 19 at 15 (also discussed in detail supra). FedEx also contends that it cannot be liable for discrimination in this case because it was not aware of any connection between Ms. Hair's depression and her poor performance at work. ECF No. 19 at 17-18 (citing an unreported case *Erickson v. Fisher Communs., Inc.*, 2009 WL 1194526 (Ct. App. May 4, 2009) where the court found that the employer had no notice of the employee's disability and therefore it could not have been a substantial factor in the employer's action). Despite meeting with Ms. Hair to discuss her warning letters, FedEx contends that she never told her managers that she was unable to comply with the call-in policy or any of her other job functions due to her depression, aside from the intermittent leave referenced in her FMLA paperwork which otherwise stated she was able to perform all of her job functions. *Id.* In addition, FedEx offers testimony by Ms. Hair in her deposition indicating that she did not feel discriminated against, including the following:

> Q. Okay, do you feel that you were in any way discriminated against at FedEx because of your depression?
> MR. LACY: Object to form.
> Answer if you're capable.
> Q. (By Mr. Askew) You're going to have to answer the question.
> A. No.

Hair dep., ECF No. 20-4 at 97.

Q. Other than the fact that you could call in –
A. Right, yes.
Q. -- under your doctor's note and say you weren't going to come in for depression --
A. Yes.
Q. -- do you feel that you were treated any differently by FedEx than any of the other employees?
MR. LACY: Object to form. Vague.
A. I don't recall. I don't know how other employees were being treated.
Q. (By Mr. Askew) Okay, do you feel that you were singled out in any way?
A. I don't feel like I was singled out, but I do believe that there was inaccurate information about me, a no-call/no-show.

Hair dep., ECF No. 20-4 at 98-99.

Ms. Hair neglects to cite to or analyze her claim under the burden shifting analysis identified above. She also fails to address any of the arguments made by FedEx. Rather, she jumps ahead to her ultimate burden and makes only one argument in her responsive briefing; that her depression was a substantial factor in the termination decision. ECF No. 47 at 13. Under both Washington and Ninth Circuit case law, conduct resulting from a disability cannot be asserted as a separate basis for termination. *See Riehl*, 152 Wash.2d at 152 (*citing Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1139-40 (9th Cir. 2001). Thus, the only argument made by Ms. Hair is that if FedEx substantially factored her absences taken due to her depression into its decision to discharge her, it cannot claim she was fired for reasons other than her disability. ECF No. 47 at 14.

Washington courts have repeatedly noted that summary judgment "should rarely be granted in employment discrimination cases." *See e.g., Sangster v. Albertson's, Inc.*, 99 Wash. App. 156, 160 (Ct. App. 2000). However, in order to defeat summary judgment, the employee "must establish specific and material facts to support each element of her prima facie case." *Marquis v. City of Spokane*, 130 Wash.2d 97, 105 (1996) (employee "must do more than express an opinion or make conclusory statements"). There appears to be no dispute amongst the parties that Ms. Hair was disabled or that she was subject to an adverse employment action. However, the Court finds that Ms. Hair fails to provide sufficient material facts to support her a prima facie case of disparate treatment to defeat summary judgment.

First, Ms. Hair fails to make out a prima facie case under the standard most widely used by Washington courts because she offers absolutely no evidence that she was treated differently than someone not in the protected class. *See Riehl*, 152 Wash.2d at 152. Furthermore, even assuming, *arguendo*, that the Court applied the alternate prima facie standard, Ms. Hair still does not fulfill her burden to establish the element of her prima facie case that she was "doing satisfactory work." The Court can find no specific and material facts offered by Ms. Hair to establish that she was doing satisfactory work at the time of her discharge. Moreover, the Court must acknowledge sworn testimony from Ms. Hair herself that she did not feel

discriminated or singled out because of her disability. For all of these reasons, the Court finds no genuine issues of material fact exist as to Ms. Hair's disparate treatment claim.

**II. Motion to Exclude Dr. Toby Long as Expert**

**A. Federal Rule of Civil Procedure 26(a)(2)**

Under FRCP 26 a party must disclose the identity of any expert witness, and if the witness is "retained or specially employed to provide expert testimony in the case," the disclosure must include a written report containing:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition, and (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(A)-(B). When a party fails to identify a witness or provide information as required under FRCP 26(a), the party is not permitted to use that information or witness, unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c).

The Ninth Circuit recently joined other circuits in holding that a treating physician is exempt from written report requirements under Fed. R. Civ. P. 26(a)(2)(B) "to the extent his opinions were formed during the course of treatment." *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 826

(9th Cir. 2011). Thus, a treating physician may be allowed to opine even as to causation if there is sufficient evidence that the opinion was formed during the course of providing treatment, regardless of submission of an expert report. *Id*. at 825-26; *but see U.S. v. Urena*, 659 F.3d 903, 908 (9th Cir. 2011) (holding physician's opinion on issues of causation required expert testimony).

Dr. Long's "expert report" consists of a two page declaration along with a two page resume in support of his testimony in this case. Askew Decl., ECF No. 25, Ex. A. FedEx argues that Dr. Long's expert report does not comply with the requirements under FRCP 26(a) because he does not state the basis and reasons for his opinions, the facts he considered, the exhibits he will use to support his conclusions, a list of his publications, or a list of the cases he has been involved in over the past four years. ECF No. 23 at 3. Ms. Hair responds that "[a]lthough not required, [she] provided information akin to the report requirements of Rule 26(a)(2)(B)." ECF No. 43 at 9. According to Ms. Hair, Dr. Long's opinions were derived from his examinations of Ms. Hair and he relied on his medical records to support his declaration. *Id*. Dr. Long also testified that he had been deposed before and he does not publish. ECF No. 43 at 10.

The Court agrees that Dr. Long's report falls short of the requirements of FRCP 26(a)(2)(B) because it offers no cognizable basis or reason for his opinions, nor does it contain the facts he relied on to support his conclusions. However, the

Court finds no indication in Dr. Long's declaration, or in Ms. Hair's responsive briefing, that he intends to offer "expert" testimony beyond the scope of opinions formed during the course of treating Ms. Hair. *See Goodman*, 644 F.3d at 826 (additional opinions formed by treating physician's after reviewing information provided by plaintiff's attorney, but not provided during the course of treatment, required disclosure of written reports). Ms. Hair even refers to Dr. Long's declaration as "akin" to an expert report and "not required." Thus, per *Goodman*, the Court finds that Dr. Long, as Ms. Hair's treating physician, is permitted to testify only as to opinions formed in the course of treatment.

**B. Federal Rule of Evidence 702**

The trial court is accorded wide discretion when acting as gatekeepers for the admissibility of expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151-52 (1999). Rule 702 should be applied consistent with the "liberal thrust" of the Federal Rules and their "general approach of relaxing the traditional barriers to 'opinion testimony'." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588 (1993) (*citing Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169 (1988)). As an initial matter, the court must determine if an expert witness has the required expertise, whether it be "knowledge, skill, experience, training, or education" under Rule 702(a). Fed. R. Evid. 702. Next, the court turns to the content of the expert's proffered testimony to assess whether the proffered testimony is both

relevant and reliable. *Henricksen v. ConocoPhillips Co.*, 605 F. Supp.2d 1142, 1154 (E.D. Wash. 2009) (*citing Daubert*, 509 U.S. at 589). In order to determine whether the testimony is admissible, the court must analyze "whether the reasoning or methodology underlying the testimony is scientifically valid, and [] whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592.

FedEx contends that Dr. Long should not be able to testify as an expert regarding Ms. Hair's mental condition because he is a doctor of internal medicine and is not qualified in the area of mental health conditions. ECF No. 23 at 4. According to FedEx, Dr. Long's formal training in psychiatry was limited to a six week rotation in medical school. *Id*. Further, Dr. Long estimates only five percent of his practice is devoted to mental health conditions, and if a patient is "atypical" or "questionable" her refers them to a psychiatrist. ECF No. 23 at 4-5. FedEx also challenges the reliability of Dr. Long's expert opinions under *Daubert* and asserts that his opinions are not the product of reliable principles and methods. Specifically, FedEx argues that Dr. Long's diagnosis of Ms. Hair with Post Traumatic Stress Disorder ("PTSD") is speculative and unsupported by reference to any treatise or other materials. ECF No. 23 at 5-6.

Ms. Hair responds that Dr. Long is qualified as an expert by his education and experience, which includes his rotation in medical school, his training as a

resident, and continuing education courses and seminars. ECF No. 43 at 2. Dr. Long testified that there is a lack of mental health practitioners in the area of his practice, and therefore he is the primary resource for patients with mental health issues such as depression and PTSD. ECF No. 43 at 3, 8. He has treated Ms. Hair since September 1998 and diagnosed her with depression in November 2006. ECF No. 43 at 2-3. Again, Ms. Hair limits the opinions reached by Dr. Long to his examination of Ms. Hair and listening to reports on her condition that led him to "his diagnosis and his opinions on causation." *Id*.

The Court finds that Dr. Long has sufficient experience through his treatment of Ms. Hair and other patients in his practice to testify as to his diagnosis of Ms. Hair's mental health conditions. Dr. Long's declaration does appear to lack a scientifically valid methodology or reasoning as required under *Daubert*, however, the Court has already found the expert report to be incomplete, and indicated that Dr. Long is only allowed to testify as to opinions formed during the course of treating Ms. Hair. Defendants are directed to raise specific objections at trial to any testimony they believe crosses the line to an opinion not formed during the course of treatment.

///

///

///

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part.

2. Defendant's Motion to Exclude Dr. Toby Long as Expert is **GRANTED**.

Dr. Long may testify only as to opinions formed in the course of treating Ms. Hair.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** this 11th day of October, 2012.

*s/ Thomas O. Rice*

THOMAS O. RICE
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT ~ 30